UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANWAR KHAN, JR.,                          Civil Action No. 16-11383

      Plaintiff,                         HON. VICTORIA A. ROBERTS
                                          U.S. District Judge
v.                                        HON. R.  STEVEN WHALEN
                                          U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Anwar Khan, Jr. ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Dock. #28] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #25] be DENIED.

## PROCEDURAL HISTORY

On December 18, 2012, Plaintiff filed an application for SSI, alleging disability as of August 22, 2012 (Tr. 140).   After the initial denial of the claim, he requested an

administrative hearing, held on September 23, 2014 in Detroit, Michigan before Administrative Law Judge ("ALJ") Oksana Xenos (Tr. 32). Plaintiff, unrepresented by counsel, testified (Tr. 36-41), as did Plaintiff's wife, Donnelle Khan (Tr. 42), and Vocational Expert ("VE") Harry Cynowa (Tr. 43-44). On November 13, 2014, ALJ Xenos found that Plaintiff was not disabled (Tr. 18-27). On March 1, 2016, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the Commissioner's decision on April 18, 2016.

## BACKGROUND FACTS

Plaintiff, born July 24, 1973, was 41 when the ALJ issued her decision (Tr. 27, 140). He completed high school and received training as a welder (Tr. 162). He worked previously as a winderman, press operator, roofer's helper, and welder (Tr. 162). He alleges disability as a result of mental illness (Tr. 161).

### A.    Plaintiff's Testimony

After waiving his right to obtain counsel, Plaintiff offered the following testimony:

He was primarily right-handed, stood 5' 10," and weighed 209 pounds (Tr. 37). He lived with his wife and three daughters (Tr. 37-38). He stopped working six years earlier after cervical spine surgery (Tr. 38). He also experienced a hiatal hernia (Tr. 38). At present, he was unable to work due to dizziness, the medication side effects of sleepiness, and the inability to bend, twist, or lift over 10 pounds (Tr. 38). He spent most of his waking hours sitting on the couch (Tr. 38). He was unable to sit for more than two-and-a-half hours at a

time, stand for more than 45 minutes, or walk for more than one mile (Tr. 38-39). He did not have a current driver's license and relied on his wife for transportation (Tr. 39). He experienced hand and wrist numbness (Tr. 39).

Plaintiff treated with a psychiatrist once every two months and a therapist twice a month (Tr. 39). He attended weekly group therapy sessions (Tr. 39). During individual therapy, he discussed his symptoms of Post Traumatic Stress Syndrome, past traumas, and his 28 months of sobriety (Tr. 40). He denied the current use of illicit drugs but was trying to quit smoking due to asthma symptoms (Tr. 40).

Plaintiff took a daily two-hour nap (Tr. 40). He was able to use a riding lawnmower but avoided grocery shopping trips due to panic attacks (Tr. 40). Group therapy helped his psychological condition (Tr. 41). He spent around five hours a day watching television, watching mostly crime dramas, programs about hunting, and football (Tr. 41). He planned to "try" to go crossbow hunting and fishing in the coming year (Tr. 41). He enjoyed reading the bible and did not experience problems getting along with others (Tr. 41).

### B. Testimony by Plaintiff's Wife

Donnell Sue Khan testified that due to her husband's mental illness, their children required therapy "because they don't quite understand why daddy's the way he is" (Tr. 42). She later testified that she did not believe that her husband was capable of supervising their children due to the medication side effect of drowsiness (Tr. 46).

### C.   Medical Evidence

#### 1.   Treating Sources[1]

A November, 2011 CT scan of the lumbar spine was unremarkable (Tr. 299).  A January, 2012 CT scan of the head, taken in response to reports of headaches and double vision, was negative for hemorrhage (Tr. 298, 301, 334).  April, 2012 medication review records by psychiatrist Barry Binkley, M.D. note that Plaintiff's diagnosis of depression was changed to bipolar disorder (Tr. 235). Dr. Binkley assigned Plaintiff a GAF of 55[2] (Tr. 235).

Dr. Binkley's June, 2012 records note Plaintiff's report of daily panic attacks but that he had been sober for 23 days following a nine-day stint in rehab (Tr. 420).  The following month, therapist David Baer, LMSW, LPC noted that Plaintiff, 40 days sober, was frustrated that his wife and mother-in-law continued marijuana use and that his mother-in-law was an otherwise bad example for his children (Tr. 416, 419).

In August, 2012, neurologist Gerald R. Schell, M.D. noted increasing symptoms of neck, shoulder, and arm pain (Tr. 308).  Dr. Schell found no neurologic deficit but observed a decreased range of cervical motion (Tr. 308).  Dr. Binkley's August 29, 2012 records state that Plaintiff required a work release due to an upcoming child custody hearing and he needed to "focus on his recovery from alcohol before he consider[s] even working at all right

---

[1]Medical records predating the alleged onset of disability date of August 22, 2012 are included for background purposes only.

[2]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000)("DSM-IV-TR").

now" (Tr. 391).  On August 31, 2012, therapist Baer opined that Plaintiff was unable to work due to bipolar disorder, anxiety, alcohol dependence, and dysthymia (Tr. 305).  The same day, Dr. Binkley found that Plaintiff was unable to do "any type of work" as a result of a "four-month abstinence phase of recovery from alcohol, depression," "flashbacks," anxiety, "abstinent syndrome, insomnia, irritability, and memory" and concentration problems (Tr. 307).

The following month, Dr. Schell remarked that a recent MRI of the cervical spine and other imaging studies were essentially unremarkable (Tr. 309-314, 327, 435-436).  He recommended steroid injections and "some physical therapy" (Tr. 309).  Dr. Binkley's October, 2012 records state that Plaintiff appeared fully oriented with good grooming and hygiene and "fair to good" judgment (Tr. 388).  Therapist Baer's November, 2012 treating records note Plaintiff's report of excessive sleep, self-isolation, and depression (Tr. 413, 380).  Plaintiff's wife opined that Plaintiff was over-medicated (Tr. 413).  Records from the next month note continued depression but an improvement in Plaintiff's relationship with his wife (Tr. 408).

January, 2013 records state that Plaintiff had just bought a new home and a new car and loved his wife and children but had "not been happy since becoming sober" (Tr. 404).  Dr. Binkley's records note that Plaintiff was alert and oriented with an appropriate affect and fair judgment but that Plaintiff reported lack of energy (Tr. 377).  Dr. Binkley noted continued "progressive improvement" as Plaintiff continued to abstain from alcohol (Tr.

349).  He observed only "very mild" depression and anxiety (Tr. 348).  Plaintiff reported that

he loved hunting, fishing, and playing with his children (Tr. 363).  Later the same month,

Plaintiff requested a medication change after experiencing anxiety and temper control

problems (Tr. 394, 402).  A chest x-ray from the following month was unremarkable (Tr.

434).  The same month, Dr. Binkley and therapist Baer cosigned a letter stating that "[d]ue

to his mental health conditions," Plaintiff was unable to work (Tr. 470).

In March, 2014, Lori Nugent, PA, found that Plaintiff was disabled due to a fatigued

appearance and level "seven" pain on a scale of one to ten (Tr. 472).  She noted a muscle grip

of 3/5, radiculopathy, a  limitation of lifting less than 10 pounds on an occasional basis (Tr.

472).   She found that Plaintiff was unable to perform repetitive grasping, reaching

pushing/puling, or fine manipulating and was unable to operate foot controls (Tr. 472).  She

found that Plaintiff experienced limitations in comprehension, memory, sustained

concentration, following simple directions, and social interaction (Tr. 473).  In July, 2014,

therapist Baer opined that "chronic mental illness" and "chronic pain issues" "severely

limited" Plaintiff's "capacity to work" (Tr. 474).

## 2.  Non-Treating Sources

In March, 2013, Bruce G. Douglass performed a non-examining review of the

psychological treating records on behalf of the SSA, finding that as a result of depression,

anxiety, and substance abuse disorders, Plaintiff experienced mild limitation in activities of

daily living and moderate limitation in social functioning and concentration, persistence, or

pace (Tr. 86). Dr. Douglass concluded that Plaintiff would "work best alone or in small, familiar groups without significant contact with the public" (Tr. 92). He concluded that Plaintiff retained the capacity to perform "routine," two-step tasks "on a sustained basis" (Tr. 92).

June, 2014 consultative examination records prepared on behalf of the SSA note Plaintiff's 2009 back injury and cervical spine fusion and bilateral carpal tunnel release surgery predating the current alleged onset of disability[3] (Tr. 476). Plaintiff reported that he could stand for one hour, walk for two blocks, and lift 10 pounds (Tr. 476). Plaintiff demonstrated normal memory and concentration with appropriate insight and judgment (Tr. 477). Plaintiff demonstrated unimpaired dexterity with intact grip strength, a normal gait, and mild limitation in cervical spine range of motion (Tr. 476-478).

### 3. Material Submitted After the ALJ's November 13, 2014 Determination[4]

---

[3]

The Court notes that the consultative physical examination performed on behalf of the SSA does not contain a signature indicating that the examination was performed by an M.D. or D.O. The Court therefore cannot conclude that the examination was performed by an "acceptable medical source" as defined by 20 C.F.R. §§ 404.1513(a), 416.913(a).

[4]

The sixth sentence of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." To satisfy the "materiality" requirement for a "Sentence Six" remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff does not cite these records in making his arguments for remand and I find that they do not provide a basis for changing the ALJ's determination. As noted by the

On January, 2014, PA Nugent found that Plaintiff would be unable to work for "an unspecified amount of time" due to upcoming esophageal, hip, and cervical spine surgery (Tr. 14). On January 28, 2015, psychiatrist John Mitchell, D.O. stated that Plaintiff was unable to work due to bipolar disorder, depression, and Post Traumatic Stress Disorder (Tr. 12).

### D. Vocational Expert Testimony

VE Harry Cynowa classified Plaintiff's past relevant work as a welder/fitter as exertionally medium and skilled and work as a paper processing machine helper as heavy/unskilled[5] (Tr. 203). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [L]ight exertional level. Cannot climb ladders, ropes or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; should avoid hazards such as moving machinery and unprotected heights; is limited to simple, routine work with no contact with the general public, occasional contact with coworkers and supervisors; and minimal

Appeals Council (Tr. 2) the assessments post-date the administrative decision by over one month. Plaintiff's condition subsequent to the date of the ALJ's decision is intrinsically irrelevant. *Sizemore*, 865 F.2d at 712. Assuming Plaintiff's condition worsened subsequent to the administrative decision, the proper remedy is to file a new application for benefits.

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

changes in the work setting; and also needs to alternate between sitting and standing at will at the workstation. Can an individual with that residual functional capacity and given profile perform any of the the Claimant's past work? (Tr. 43).

The VE replied that the above limitations would preclude Plaintiff's past relevant work but would allow for the unskilled, light work of a hand packager (2,500 positions in the regional economy); small products assembler (2,500); and visual inspector checker (1,000) (Tr. 43-44). The VE testified further that if the same individual were to limited sedentary work, he could perform the work of a bench hand (3,000); final assembler (3,000); and security monitor (1,500) (Tr. 44). The VE testified that if the individual were off task up to 20 percent of the workday, all competitive employment would be eliminated (Tr. 44-45). The VE stated that his testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*"), except for his testimony regarding a sit/stand option, which was based on his own professional experience (Tr. 45). In response to questioning by Plaintiff, the VE stated that the need to miss six days a month (due to the need to attend group and individual therapy sessions) and eight days every three months (due to examination and medication review by the psychiatrist) would preclude all work (Tr. 45).

### E.  The ALJ's Decision

As a preliminary matter, ALJ Xenos found that she was not bound by the findings made by another ALJ in an August 21, 2012 denial of benefits because Plaintiff had demonstrated "a new and material change in circumstances" as of the current alleged onset

date of August 22, 2012 (Tr. 18)(*citing Drummond v. CSS,* 126 F.3d 837 (6th Cir. 1997)).[6]

Then citing the medical records pertaining to the current application, the ALJ found that

Plaintiff experienced the "severe" impairments of "bipolar disorder, anxiety, ADHD, sleep

apnea, carpal tunnel syndrome, headaches, and degenerative disk disease" but that none of the

conditions met or medically equaled to an impairment listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1 (Tr. 20-21).   She found that Plaintiff experienced mild limitation in activities

of daily living and moderate limitation in social functioning and concentration, persistence,

or pace (Tr. 21-22).   The ALJ found that Plaintiff had the Residual Functional Capacity

("RFC") for exertionally light work with the following additional limitations:

> [H]e is limited to simple, routine work with no contact with the general public,
> occasional contact with coworkers and supervisors, and minimal changes in
> the work setting.   He cannot climb ladders, ropes, or scaffolds; can
> occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl;
> should avoid hazards, such as moving machinery and unprotected heights; and
> needs to alternate between sitting and standing at will at the workstation (Tr.
> 22).

Citing the VE's job findings, the ALJ determined that while Plaintiff was unable to perform

any of his past relevant work, he could work as a hand packager, small products assembler,

and visual inspector checker (Tr. 26, 43-44).

   The ALJ discounted the allegations of disability.   She accorded "great weight" to the

non-examining finding that Plaintiff was capable of "simple, routine work with minimal

---

6

In the previous claim for benefits, ALJ Jeanne M. VanderHeide found that Plaintiff was
disabled for a closed period between November 7, 2009 through April 14, 2011 but was  not
disabled from April 15, 2011 through the August 21, 2012 decision (Tr. 18, 52-72).

changes in the work setting, and no contact with the general public and limited contact with coworkers" (Tr. 24). She discounted Dr. Binkley's treating opinion that Plaintiff was disabled as a result of depression, anxiety, and concentrational problems on the basis that the opinion was contradicted by Dr. Binkley's own treating records (Tr 24). She found that Mr. Baer's and PA Lori Nugent's assessments were not entitled to any weight because they were not acceptable medical sources (Tr. 24-25). The ALJ cited January, 2013 treating records stating that Plaintiff appeared "clear headed and animated" with full orientation, and good grooming and hygiene (Tr. 24).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health &*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  The Analysis of the Medical Evidence

Plaintiff argues first that the ALJ erred by failing to adopt the "disability opinions" by both the acceptable and non-acceptable sources.  *Plaintiff's Brief,* 4-15, *Docket #25,* Pg ID 550.

### 1.  Basic Principles

Under SSR 06-03p, medical sources are divided into "acceptable medical sources," including medical or osteopathic doctors, and "other health care providers" who are not acceptable medical sources ("non-acceptable medical sources"). 2006 WL 2329939, *1-2 (August 9, 2006).  Non-acceptable medical sources include "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . ."[7] *Id.* at 2.  Under the SSA regulations, an acceptable medical source is required to establish the existence of a medically determinable impairment and "only 'acceptable medical sources'" can provide medical opinions. *Id.* 2 (*citing* 20 CFR 404.1527(a)(2), 416.927(a)(2).  The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a examining/consultative source, or a "non-examining source." *Smith v. CSS*, 482 F.3d 873, 875

-------------------

[7]A third category of non-medical sources, including teachers, counselors, social welfare agency personnel,  counselors, clergy, employers, family members, and friends, is inapplicable to the present case.  SSR 06-03p at *2.

(6th Cir. 2007).

Nonetheless, the opinions of non-acceptable medical sources are "entitled to consideration due to [their] expertise and long-term relationship" with a claimant. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); 20 C.F.R. §§ 404.1502, 404.1513. In weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p, at *2.

### 2. Dr. Binkley

Psychiatrist Dr. Binkley, a medical doctor, is not only an acceptable medical source but a treating source as well. "[I]f the opinion of the claimant's treating physician is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)*(citing Wilson,* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, see *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir. 2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2))[8]. The failure to articulate "good reasons" for rejecting a treating

---

[8]
In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" (2) "frequency of examination," (3) "nature and extent of the treatment," (4) the "supportability

physician's opinion constitutes reversible error. *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir. 2013). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart*, at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

As discussed in above Section II.C.1, Dr. Binkley's August , 2012 records state that Plaintiff required a work release due to an upcoming child custody hearing and he needed to "focus on his recovery from alcohol before he consider[s] even working at all right now" (Tr. 391). Two days later on August 31, 2012, Dr. Binkley found that Plaintiff was unable to do "any type of work" as a result of a "four-month abstinence phase of recovery from alcohol, depression, "flashbacks," anxiety,  "abstinent syndrome, insomnia, irritability," and memory and concentration problems (Tr. 307). In February, 2013, Dr. Binkley again found that Plaintiff was disabled (Tr. 470).

Plaintiff's argument that the ALJ failed to comply with the substantive or procedural requirements of a treating physician analysis is unavailing. The ALJ acknowledged Dr.

of the opinion," (5) "consistency ... with the record as a whole," and, (6) "the specialization of the treating source." *Wilson*, at 544.

Binkley's "disability opinions" but accorded them "limited weight" on the basis that they were not consistent with the more recent records showing a "significant improvement" (Tr. 24). The ALJ cited November, 2013 therapy records showing normal motor activity and speech; an appropriate affect; and "goal-directed and logical" thought processes (Tr. 24). She cited the January, 2013 therapy records showing an unremarkable affect and appearance and that Plaintiff was "doing well," with only "very mild[]" depression and anxiety (Tr. 24). The ALJ's summary of the psychiatric and counseling records post-dating Dr. Binkley's disability findings is consistent with my own review of the records showing that as of December, 2012, Plaintiff reported improvements in his relationship with his wife (Tr. 408); January, 2012 records showing that Plaintiff had recently bought a new house and car (Tr. 404); and Dr. Binkley's observation of an appropriate affect, fair judgment, and "progressive improvement" as Plaintiff continued to abstain from alcohol (Tr. 349).

Plaintiff's argument is also unavailing to the extent that he claims that the ALJ did not consider the length, frequency, or extent of the treating relationship; nature of the treatment; supportability of the opinion; consistency with the record as a whole; Dr. Binkley's specialization, or any of the other factors to be taken into account in discounting a treating opinion. *Wilson,* at 544. The ALJ made reference to Dr. Binkley's August 31, 2012 letter noting an ongoing treating relationship (Tr. 24). The ALJ acknowledged that Dr. Binkley was a psychiatrist and performed periodic mental status examinations (Tr. 24). She observed that Dr. Binkley's own treating records stood at odds with the August, 2012 disability opinion.

-16-

Moreover, the ALJ did not err in adopting Dr. Douglass' March, 2013 finding that Plaintiff experienced at most moderate psychological limitation, which included a review of both Dr. Binkley's disability opinion and the treatment records (Tr. 24, 86).   As such, the ALJ's adoption of the non-examining assessment over the treating one does not provide grounds for remand.   *See* SSR 96–6p, 1996 WL 374180, *3. (July 2, 1996)("In appropriate circumstances," the opinion of non-examining source "may be entitled to greater weight than the opinions of treating or examining sources").

### 3. The Non-Acceptable Sources

#### a. Therapist Baer

Plaintiff also takes issue with the ALJ's finding that Baer's multiple disability opinions were not entitled to *any* weight because "he is not a medically acceptable source" (Tr. 24). At first glance, the ALJ's apparently blanket rejection appears to contradict the requirement that the therapist's opinions "is entitled to consideration due to his expertise and long-term relationship" with Plaintiff.  *Cole, supra,* 661 F.3d at 939; 20 C.F.R. §§ 404.1502, 404.1513; *see also* SSR 06–3p, *supra,* at *2.   However, the ALJ's rejection is directly prefaced by the ALJ's citation to Baer's July, 2014 statement that he provided counseling to Plaintiff from "February, 2010 to the present" (Tr. 24).  The ALJ noted that Baer's February, 2013 disability opinion was cosigned by Dr. Binkley (Tr. 24). As discussed above, the ALJ rejected the cosigned disability opinion on the basis that it was contradicted by the treating records showing only mild psychological impairment (Tr. 24).   Because the ALJ considered the

appropriate factors in denying Baer's opinions, a remand on this basis is not available.  SSR 06–3p, *2, *supra.*

### 2. PA Nugent

Likewise, the ALJ did not err in rejecting PA Nugent's finding that Plaintiff lacked the psychological and physical capability for even unskilled, sedentary work (Tr. 24-25, 472-474). The ALJ found that the PA's opinion was supported by "very few records from 2013 and 2014," and that an EMG which was negative for radiculopathy performed during the relevant period contradicted the findings of extreme physical limitation (Tr. 25).  Standing alone, the ALJ's finding that the disability opinion was unsupported by treating records or diagnostic studies supports the rejection of the PA's opinion.[9]  Elsewhere, the ALJ cited Plaintiff's admission that he was able to use a riding mower, help his daughter with her homework, care for pets, and planned to go hunting and fishing with his friends in the upcoming season (Tr. 21).  Because the ALJ provided a well supported rationale for the rejection of the PA's opinion, her findings should remain undisturbed.

---

[9]
The ALJ also noted that the June, 2014 consultative physical examination performed on behalf of the SSA was essentially unremarkable with the exception of a reduced range of cervical spine motion (Tr. 25, 476-478).  While as discussed, *above,* the examination records cannot be accorded the status of an "acceptable medical source" opinion due to the lack of a signature, the findings, even if accorded the lesser status of a non-acceptable source or "other" source, stand grossly at odds with PA Nugent's findings.  The ALJ's brief citations to the record refers to it as "examination" (Tr. 23, 25) and there is no indication that the ALJ accorded it the evidentiary value of an "acceptable source."

### B.  Due Process

Plaintiff, unrepresented at the administrative level, argues that his due process rights were violated "in at least three respects at the hearing . . ." *Plaintiff's Brief* at 15.  He contends that (1) the ALJ "failed [to] establish" that he "had the opportunity to review the evidence" prior to his testimony, (2) failed to give him "any opportunity to object to the evidence in the record" or "ask him whether he had any such objection," and (3) failed to create a record to establish that all evidence had been added to the record.  *Id.* at 15-16.  He cites HALLEX I-2-6-58.C, which requires the ALJ to ask the claimant if he has had the opportunity to examine the proposed exhibits, and asking if there are objections to the exhibits.  *Id.* at 16.

Prior to taking testimony, HALLEX I-2-6-58.C requires the ALJ to ask the claimant "whether he . . . had an opportunity to examine the proposed exhibits; ask "if there are any objections to admitting the proposed exhibits into the record" and, if applicable, make a "[r]uling on any objections to the proposed exhibits."[10]

The pre-testimony colloquy satisfies the HALLEX requirements.  The ALJ queried Plaintiff as to the exhibits as follows: "Mr. Khan, you had a chance to look at the CD before you came in here, and I understand you have some additional documents for me to take into the record.  Is that correct?" (Tr. 35).  Plaintiff answered in the affirmative (Tr. 25).  She then asked him whether he had given all of the newer records to the monitor, to which he answered

---

[10]https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-58.html.  (Last visited July 24, 2017).

"yes" (Tr. 35). Plaintiff then denied that there were "any other documents," or "medical records," or other medically related evidence that needed to be added to the record (Tr. 35). Plaintiff objected to the record only to the extent that it stated that he was applying for SSI rather Disability Insurance Benefits ("DIB") (Tr. 36). He made his objection on the basis that he "made too much money to do SSI" (Tr. 36). In response, the ALJ stated that although the record did not show an application for DIB, she would "make sure that there isn't also a [DIB] claim" (Tr. 36). Plaintiff's argument that the record is unclear is contradicted by (1) his statement that he reviewed the records, (2) his opportunity to object to the portion of the record and statement that the record erroneously reflected an application for SSI, and, (3) the ALJ's statement that the SSI/DIB discrepancy would be investigated.[11] *Plaintiff's Brief* at 16.

Plaintiff's argument that his case was prejudiced because he did not have the opportunity to inspect, amend, or object to the file is further undermined by his failure to present additional evidence from the relevant period subsequent to the ALJ's opinion. Plaintiff, now represented, could have but did not present additional material subject to the sixth sentence of 42 U.S.C. § 405(g) to either the Appeals Council or after he filed the present action. More generally, the record shows that the ALJ satisfied her "heightened duty" to develop the record as to the unrepresented claimant. *Lashley v. Secretary of Health and*

---

[11]

While the administrative opinion makes reference to the application for SSI, I note that this is consistent with the record showing an SSI application but no application for DIB. Moreover, the question of whether Plaintiff was applying for SSI or DIB is a moot point, given that the basis for disability under SSI applies to a DIB claim.

*Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983)(Where a claimant is unrepresented at the hearing, "the ALJ has a duty to exercise a heightened level of care and assume a more active role" in the proceedings). The ALJ properly elicited testimony regarding the alleged physical and psychological limitations and daily activities (38-41).

My recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's history of physical injuries or mental health treatment. Nonetheless, the ALJ's determination that Plaintiff was capable of a significant range of unskilled work is well within the "zone of choice" accorded the administrative fact-finder and as such, should remain undisturbed. *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Dock. #28] be GRANTED and that Plaintiff's Motion for Summary Judgment [Dock. #25] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R.  Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 26, 2017

## CERTIFICATE OF SERVICE

I hereby certify on July 26, 2017, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 26, 2017.

s/Carolyn Ciesla
Case Manager to
Magistrate Judge R. Steven Whalen